IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00391-LTB-MEH

CURTIS GUION, #129917

Plaintiff,

v.

SPURLOCK, Correctional Officer,
GILBERT, Correctional Officer,
CUTCHER, Sergeant,
GROOMS, Correctional Officer,
MAHER, Correctional Officer,
WHITE, Correctional Officer,
T. TRUJILLO, Sergeant,
BARBERO, Captain,
TRAVIS TRANI, Warden,
BROWN, Mail Room Correctional Officer,
P. ARCHULETA, Correctional Officer,
MONTOYA, Correctional Officer,
MORRIS, Lieutenant,
BENSKO, Correctional Officer,
D. RAYMOND, Sergeant,
SEAN FOSTER, Associate Warden,
SOLANO, Mail Room Correctional Officer,
J.R. ADAMS, Correctional Officer,
BUTERO, Sergeant,
MAHONEY, Correctional Officer,
WITZ, Correctional Officer,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is a Partial Motion to Dismiss [filed August 4, 2014; docket #40] filed

by Defendants Spurlock, Gilbert, Maher, White, Barbero, Trani, Brown, Archuleta, Montoya,

Morris, Raymond, Foster, Solano, Adams, Butero, and Mahoney, and joined by Defendants Bensko, Cutcher, T. Trujillo, and Grooms [docket ##63 and 75]. The motion has been referred to this Court for recommendation. (Docket #70.) The Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court RECOMMENDS that Defendants' motion be **GRANTED** in part and **DENIED** in part.[1]

## BACKGROUND

### I.    Procedural History

On February 11, 2014, Plaintiff initiated this lawsuit under 42 U.S.C. § 1983 as a *pro se* litigant incarcerated in the Colorado State Penitentiary within the Colorado Department of Corrections (DOC). (Docket #1.) On March 10, 2014, Magistrate Judge Boyd N. Boland reviewed the Complaint and determined that it was deficient because Plaintiff failed to allege the personal participation of Defendants in a deprivation of his constitutional rights. (Docket #9.) Magistrate Judge Boland directed Plaintiff to file an amended complaint within thirty days of the March 10, 2014 order. (*Id.*)

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Plaintiff filed a "Motion to File Amended Complaint" on April 10, 2014 [docket # 12] and a Letter with the Court asserting an additional claim for relief on April 16, 2014 [docket #13]. Consistent with Senior Judge Lewis T. Babcock's initial review, this Court construes these two documents liberally and together as Plaintiff's Amended Complaint. (Docket #15, pp. 2-3.) Plaintiff was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Docket #8.) According to 28 U.S.C. § 1915(e)(2)(B)(I), a court must dismiss the action if Plaintiff's claims are frivolous or malicious. In light of those requirements and pursuant to D.C.Colo. LCivR 8.1, Senior Judge Babcock entered an order dismissing (1) claim three in its entirety; (2) the portion of claim six alleging that Defendant Trani denied Plaintiff adequate mental health care; and (3) numerous Defendants from the action. (Docket #15.)

The remaining Defendants filed the present Partial Motion to Dismiss certain portions of the remaining claims on grounds that (1) the Eleventh Amendment provides total immunity from suit in Defendants' official capacities; (2) to the extent Defendants are sued in their individual capacities, Plaintiff fails to adequately allege certain Defendants' personal participation in claims one, two, four, and five; (3) Plaintiff's fourth claim fails to state a plausible First Amendment retaliation claim for relief; (4) claim six is rendered moot based upon Plaintiff's transfer from the Colorado State Penitentiary (CSP) to the Sterling Correctional Facility (SCF), or, alternatively, claim six must be dismissed because there is a pending class action asserting the same claim. (Docket #40.) Plaintiff responded to the motion on October 6, 2014. (Docket #66.) Defendants did not reply.

## II. Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Amended Complaint, which are taken as

true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's first claim alleges that beginning on January 3, 2012, while he was incarcerated at SCF, and continuing through his transfer to Centennial Correctional Facility (CCF), and then to the CSP,[2] Defendants conspired to murder him and his family and friends, and threatened his family and friends so they would cease communications with Plaintiff. (Docket #12 at p. 4.)  Specifically, Plaintiff alleges that SCF correctional officers (Defendants Gilbert, Mahoney, Archuleta, and Adams), CCF correctional Officers (Defendants Montoya and Morris), and CSP correctional officers (Defendants Spurlock, Witz, Cutcher, Grooms, White, and Maher) spread rumors throughout the facilities that Plaintiff was a "snitch." (*Id.* at p. 5.)

Plaintiff's second claim alleges that throughout 2013, Defendants Mahoney, Solano, and Brown destroyed his incoming and outgoing mail on multiple occasions. (*Id.* at p. 10.)  Plaintiff alleges that on January 7, 2013, he witnessed Defendant Mahoney marking Plaintiff's mail to be destroyed. (*Id.*)

Plaintiff's fourth claim[3] alleges that he was placed in a cell contaminated with another inmate's feces. (*Id.* at p. 13.)  On November 12, 2013, after he had been removed from the cell, Plaintiff filed a grievance with Defendant Assistant Warden Foster complaining of the cell conditions. (*Id.*)  On November 22, 2013, Plaintiff received a response to his grievance from Defendant Foster; the following day he was returned to the contaminated cell. (*Id.*)  Plaintiff

---

[2] On July 25, 2014, Plaintiff informed the Court he had been transferred back to SCF. (Docket #35.)

[3] Senior Judge Babcock summarily dismissed claim three. (Docket #15.)

alleges that the he was intentionally returned to the contaminated cell because he filed the grievance.  (*Id.*)

Plaintiff's fifth claim alleges that Defendants Bensko, Raymond, T. Trujillo, Butero, and Barbero engaged in excessive use of force against him.  (*Id.* at 14.)  Specifically, Plaintiff alleges he was sprayed in the eyes with "MK 9-OC" by Defendant Butero and suffered a shotgun wound in his left elbow from Defendant Bensko on May 14, 2013.  (*Id.*)  Additionally, Plaintiff alleges Defendant Butero picked him up and slammed him on his face while he was cuffed and chained on August 21, 2013; as a result, Plaintiff was hospitalized with two severely chipped front teeth and a split lip requiring eight stitches.  (*Id.*)

Finally, Plaintiff's sixth claim alleges that he has been denied adequate access to outdoor recreation since January 2013.  (Docket #13 at 2.)  Plaintiff alleges that since his transfer to the CSP in January 2013, he has been forced to recreate in a ninety-square-foot cell with a two-and-a-half foot vent in the wall.  (*Id.*)

The Court has reviewed the operative pleading, the Motion to Dismiss, the response, and the applicable law, and is sufficiently advised.

## **LEGAL STANDARD**

### I.      **Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castenada v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the

proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

## II.   Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   *Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an

entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such a claim

survives the motion to dismiss.  *Id.* at 680.

### III.    Dismissal of Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less

stringent standard than is applicable to pleadings filed by lawyers.  [The] court, however, will not

supply additional factual allegations to round out a plaintiff's complaint or construct a legal

theory on plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)

(quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court

can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it

should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various

legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading

requirements."   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, this

interpretation is qualified in that it is not "the proper function of the district court to assume the

role of advocate for the pro se litigant."  *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143

(10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for

plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188,

1197 (10th Cir. 1989)).

## ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative,

the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the

court lacked subject matter jurisdiction." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan.

1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

## I.      Sovereign Immunity

Plaintiff does not specify whether he sues Defendants in their official capacities, individual capacities, or both.  Apparently assuming the Court may construe Plaintiff's claims against Defendants in their official capacities, Defendants argue they are absolutely immune from liability for monetary damages and declaratory relief pursuant to the doctrine of sovereign immunity.

Claims against state officials in their official capacities are essentially claims against the state entity.  *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994).  Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies.  *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991).  Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights.  *See Ex parte Young,* 209 U.S. 123, 159-60 (1908).  But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past"

or as a means for seeking money damages. *Buchwald v. University of New Mexico Sch. of Medicine,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Plaintiff seeks monetary damages against Defendants in their individual and official capacities, as well as injunctive relief. (Docket #12 at 2 and 19-21.) To the extent that Plaintiff seeks monetary damages and other relief for past harms against Defendants in their official capacities, the Court finds it lacks jurisdiction under the Eleventh Amendment, and recommends those claims be dismissed. However, in a supplement to the Amended Complaint, Plaintiff also seeks prospective injunctive relief from Defendants in the form of a restraining order and a civil order of protection. (Docket #12 at 19-21.) Specifically, Plaintiff requests that Defendants be restrained from having any contact with Plaintiff's family and friends as well as "various other inmates subjected to [Defendants'] misconduct." (*Id.*) Defendants do not address whether Plaintiff has established a substantial likelihood he will be injured by Defendants in the future, *see Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991); thus, the Court will not make a determination of that issue at this juncture. For purposes of this Court's subject matter jurisdiction, the requested injunctive relief falls within the *Young* exception to Eleventh Amendment immunity.

Accordingly, the Court recommends that Plaintiff's claims for monetary damages against the official capacity Defendants be dismissed, while his claims for prospective injunctive relief against Defendants in their official capacities remain, so long as they state plausible claims for relief.

## II.     Qualified Immunity

Defendants assert they are entitled to qualified immunity for claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose

possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232-35. *Pearson* instead afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, Defendants argue that Plaintiff has failed to allege personal participation on behalf of certain Defendants.[4] Personal participation is an essential allegation in a civil rights action.

---

[4] Senior Judge Babcock's initial review dismissed numerous Defendants for lack of personal participation while permitting claims against other Defendants to proceed; however, Senior Judge Babcock's initial review was based on a "legally frivolous" standard of review under 28 U.S.C. § 1915(e)(2)(B)(I), which only requires dismissal of claims based on an indisputably meritless legal theory, or if they are founded on clearly baseless factual contentions. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). This Court now reviews the sufficiency of Plaintiff's

*See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  "To establish ... liability, a plaintiff is required to bring forth evidence that an individual defendant directly and personally participated in the purported constitutional violation."  *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007)).   There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993).  *In Kansas Penn Gaming*, the Tenth Circuit noted that in a civil rights case asserting claims against individual government actors, "it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against an entire group of defendants. *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).

Defendants assert that Plaintiff failed to sufficiently allege the personal participation of certain Defendants in claims one, two, four and five.  Defendants do not challenge the alleged personal participation of all of the Defendants in claims one, two and five and do not move to dismiss those claims in their entirety.[5]  Thus, at the outset, the Court notes that Defendants do

allegations regarding Defendants' personal participation in the alleged constitutional violations (as to those Defendants who survived initial review) without the "legally frivolous" standard applied at the initial review stage.

[5] The Court recognizes that Defendants include a conclusory paragraph asserting that all of the Defendants are entitled to qualified immunity because Plaintiff fails to demonstrate a violation of a constitutional right, and/or demonstrate that Defendants' actions violated clearly established law.  (*See* docket #40, p. 17.) This paragraph suggests Defendants move to dismiss all of the

not (sufficiently) challenge the sufficiency of the pleadings as to the following claims against the following Defendants in their individual capacities:

- Claim one against Defendants Montoya and Morris;

- Claim two against Defendant Mahoney; and

- Claim five against Defendants Bensko and Butero.

The Court proceeds to address each of the arguments Defendants sufficiently analyze.

A.    Eighth Amendment Failure to Protect Violation (Claim One)

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotations omitted).   Labeling an inmate as a snitch "constitutes deliberate indifference to the safety of that inmate." *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).   Plaintiff claims that Defendants violated his Eighth Amendment rights by, among other things, labeling him a snitch and encouraging inmates to harm him.   Defendants contend Plaintiff failed to sufficiently allege the personal participation of Defendants Gilbert, Mahoney, Archuleta, Adams, Spurlock, Witz, Cutcher, Grooms, White, Casady, and Maher (the SCF and CSP correctional officers) in this failure to protect claim.

Plaintiff alleges that Defendants spread rumors about him, slandered his name, "drill[ed]" into inmates' minds that he was a "snitch," and told inmates that, because Defendants were killing Plaintiff's family and friends, the inmates needed to stab Plaintiff.   (Docket #12 at pp. 6-8.)   Plaintiff alleges that Defendants engaged in these communications on every occasion for

---

claims against all of Defendants on the basis of qualified immunity, despite titling the motion a "Partial Motion to Dismiss."   Without any additional legal analysis supporting these conclusory statements or indicating how they relate to this case, the Court cannot determine on what basis Defendant's position rests.

inmate interaction, such as while escorting inmates to meals, showers, and recreation, or during Defendants' "walk through on their rounds." (*Id.* at p. 6.)  In order to further their conspiracy, Defendants allegedly "passed out shanks to all inmates who agreed to attempt an attack" against Plaintiff. (*Id.*)  Plaintiff lists the SCF and CSP correctional officers as participating in "each of the ways described" from January 25, 2013 to March 19, 2014 "and beyond." (*Id.* at p. 8.)

While Plaintiff has alleged some context in terms of the timing and location of the alleged communication, it remains unclear what specifically each SCF or CSP correctional officer communicated to inmates, and when and where each of those conversations occurred.  In civil rights claims against individual government actors, the Tenth Circuit has emphasized that it is particularly important "the complaint make clear exactly *who* is alleged to have down *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions" against a group of defendants.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).  Providing a list of Defendants involved in various allegations of "brainwashing the inmates" is not enough to meet the personal participation requirement and is precisely the type of group allegations the Tenth Circuit disapproves.  *See id.*  Further, the alleged timeframe for the constitutional violations is over several months "and beyond," and the location is "every occasion for inmate interaction." (Docket #12 at p.6.)  Such broad and general allegations are not sufficiently specific to put Defendants on notice as to the basis of Plaintiff's claims against them.

Accordingly, the Court recommends the District Court find Plaintiff has not sufficiently alleged the personal participation of Defendants Gilbert, Mahoney, Archuleta, Adams, Spurlock, Witz, Cutcher, Grooms, White, Casady, and Maher in his failure to protect claim.

B.      First Amendment Right to Receive and Deliver Information (Claim Two)

Plaintiff has a "First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *See Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004). "A prisoner also has a constitutional right to have his outgoing mail processed for delivery, absent legitimate penological interests to the contrary." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). Plaintiff's second claim alleges that Defendants Mahoney, Solano and Brown violated his First Amendment rights by destroying his incoming and outgoing mail.  Specifically, Plaintiff alleges that Defendant Mahoney conspired with "mailroom personnel" by picking up a letter from Plaintiff's cell at 7:30 p.m. on January 7, 2013, and marking the letter to indicate to mailroom staff that the letter should be destroyed.  (Docket #12 at p. 10.)  Defendants argue that Plaintiff fails to allege any facts that link Defendants Solano and Brown to the alleged violation.

Plaintiff alleges that Defendants Solano and Brown handled all incoming and outgoing mail, and, therefore, were the intended recipients of Defendant Mahoney's "signal" to destroy Plaintiff's mail.  Plaintiff alleges that either Solano or Brown destroyed or "disrupted" his mail on certain specific dates in 2013.  Absent a contrary penological interest, which Defendants do not assert as grounds for dismissal in this instance, Plaintiff's allegations that Defendants Solano and Brown destroyed Plaintiff's mail on specific dates in 2013 is sufficient to demonstrate their personal participation in the alleged constitutional violation.  Defendants do not otherwise assert a basis for dismissal of claim two.  Accordingly, the Court recommends denying the portion of the motion seeking dismissal of claim two against Defendants Solano and Brown.

C.   <u>First Amendment Retaliation and Eighth Amendment Violations (Claim Four)</u>

Plaintiff's fourth claim alleges that Defendant Foster subjected him to inhumane conditions of confinement in violation of the Eighth Amendment by placing him in a cell contaminated by another inmate's feces.   (*Id.* at 13.)   Additionally, Plaintiff raises a First Amendment retaliation claim by alleging that he was temporarily removed from the cell, but Defendant Foster subsequently returned him to the contaminated cell in retaliation for filing a grievance.   Defendants argue the Plaintiff fails to allege Defendant Foster's personal participation, and, as alternative grounds for dismissal, Plaintiff fails to sufficiently allege a First Amendment retaliation claim for relief.

i.   Personal Participation

Plaintiff asserts that he was "moved into a high security hardened cell that ha[d] feces from another inmate on the floor." (Docket #12 at 13.)  Plaintiff was removed from the cell on October 22, 2013. (*Id.*)  On November 12, 2013, Plaintiff filed a grievance and "made Associate Warden Sean Foster aware of the [cell's] condition." (*Id.*)  On November 22, 2013, Plaintiff received a response to his grievance from Defendant Foster, and the next day, Plaintiff alleges he "was intentionally moved back into [the feces-contaminated cell]" because he complained of its condition. (*Id.*)

Defendants argue that Plaintiff has failed to sufficiently allege Defendant Foster's personal participation because "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by Plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  Defendants' reliance on *Gallagher* is misplaced; denying an inmate's grievance is not the same as retaliating against an inmate for filing a grievance.  In this case, it was not Defendant Foster's response to

the grievance that violated the First Amendment, but his alleged placement of Plaintiff in the contaminated cell.   In any event, Plaintiff does not allege that Defendant Foster denied his grievance; he alleges only that Defendant Foster responded to the grievance.   Plaintiff's allegations that Defendant Foster intentionally moved him into a feces-infested cell as retaliation for filing a grievance is sufficient to satisfy the personal participation requirement.   Accordingly, the Court recommends denying the portion of Defendants' motion seeking dismissal of Defendant Foster for failure to allege personal participation.

   ii.  Sufficiency of the Pleadings for First Amendment Retaliation Claim

  To establish a First Amendment retaliation claim, Plaintiff must demonstrate:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).   Defendants contend that Plaintiff has failed to sufficiently plead the third element in this three-part test because the allegations do not show that "but for" the retaliatory motive of Defendant Foster, Plaintiff would not have been moved back to the contaminated cell.   *See Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990).

  The Tenth Circuit has held that the third element of the three-part test for a retaliation claim is satisfied where "Defendants were aware of [Plaintiff's] protected activity, that his protected activity complained of Defendants' actions, and that the [adverse action] was in close temporal proximity to the protected activity."   *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010).   Here, Plaintiff has alleged that Defendant Foster was aware of Plaintiff's grievance about

the cell's condition, and that he moved Plaintiff back to the cell the day after responding to that grievance.  Thus, two of the three factors relied upon by the Tenth Circuit in *Gee* are satisfied. *See id*.  While Plaintiff has not alleged that the grievance was directed specifically at Defendant Foster, he pleads that Defendant Foster intentionally moved him back to the cell in retaliation for complaining of the cell's condition.  Reading the complaint liberally, as the Court must for a *pro se* Plaintiff, the Court finds Plaintiff has sufficiently alleged that he would not have been placed in the contaminated cell a second time "but for" his filing a grievance complaining of the cell's condition. *See id*.

Accordingly, the Court recommends denying the portion of Defendants' motion seeking dismissal of claim four for failure to state a retaliation claim.

Aside from a conclusory statement regarding all of Plaintiff's claims, (*see* docket # 40, p. 17), Defendants do not argue that the law regarding First Amendment retaliation was not clearly established.  Thus, the Court recommends finding that Defendant Foster is not entitled to qualified immunity.

D.    Eighth Amendment Excessive Use of Force (Claim Five)

Plaintiff's fifth claim alleges that on August 21, 2013, Defendants Bensko, Raymond, T. Trujillo, Butero, and Barbero used excessive force against him, resulting in two chipped front teeth and a split lip that required eight stitches.  (Docket #12 at p. 14.)  Additionally, Plaintiff alleges that on May 14, 2013 Defendant Butero sprayed him with "MK 9-OC," and Defendant Bensko inflicted a shotgun wound in Plaintiff's elbow.  (*Id.*)

Defendants argue that Plaintiff's allegations of excessive use of force by Defendants Raymond, T. Trujillo, and Barbero are insufficient to establish personal participation.  (Docket #40 at 11.)  Plaintiff alleges generally that these three Defendants "participated in an excessive

use of force" against him, but he does not allege specifically what actions or inactions each individual Defendant undertook.   In contrast, Plaintiff provides a detailed explanation of Defendant Butero's conduct on August 21, 2013, alleging that he was "picked up off the ground and slammed on [his] face by [Defendant] Butero while completely cuffed [and] chain-restrained from waste to ankle[.]"[6]   Likewise, Plaintiff alleges specific conduct by Defendant Butero on May 14, 2013 (he sprayed Plaintiff with MK 9-OC) and by Defendant Benkso (he shot Plaintiff in the elbow).   With regard to Defendants Raymond, T. Trujillo, and Barbero, Plaintiff specifies the date they "participated in excessive use of force," and he alleges the specific injuries that resulted; however, he does not identify how they were each individually involved in the incident through their action or inactions.   The Court finds that Plaintiff's conclusory statement about their involvement does not satisfy the personal participation requirement.

Accordingly, the Court recommends the District Court find Plaintiff has failed to sufficiently allege Defendants Raymond, T. Trujillo, and Barbero personally participated in the excessive use of force claim.

## III.   Mootness and Duplication

Plaintiff's sixth claim alleges that he was denied sufficient outdoor recreation while detained at the CSP.   (Docket #13 at 2.)   Specifically, Plaintiff contends that recreation was confined to a ninety-square-foot cell with only a two-and-a-half foot vent in the wall and the lack of adequate sunlight exacerbated his mental health condition and caused him emotional distress.

---

[6] Plaintiff refers to a video recording of the incident that was reviewed in a separate investigation, but this video was not submitted for this Court's consideration.

A.    Mootness

Defendants argue that claim six is moot because Plaintiff has been transferred to SCF. Article III of the United States Constitution restricts the decision-making power of the federal judiciary to cases involving "a case or controversy."  U.S. Const. Art. III, § 2.  "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).  Parties must have a "personal stake in the outcome" of the lawsuit at all stages of the case.  *Spencer v. Kenma*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)); *see also Alvarez v. Smith*, 558 U.S. 87, 92 (2009) ("An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (internal quotations and citation omitted).  A prisoner's claims for injunctive and declaratory relief are moot when a prisoner has been transferred from the facility, so that he is no longer subject to the conditions of confinement on which he based his claims.  *Burnett v. Jones*, 454 F. App'x. 655, 657 (10th Cir. 2011) (*see also Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997).

On July 25, 2014, Plaintiff filed a motion for extension of time and a notice of change of address, stating that he had been transferred from the CSP to SCF.  (Docket #35.)  Because Plaintiff is no longer held at the CSP, he is no longer subject to the conditions of confinement for which he is seeking relief.

Generally, a prisoner's transfer from a prison facility moots that prisoner's claim for injunctive relief against the transferring facility.  *See McAlpine v. Thompson*, 187 F.3d 1213, 1216–18 (10th Cir. 1999) (mootness doctrine applies to prison conditions claim where there is no "reasonable expectation" that the plaintiff will return to the same prison and the same conditions of confinement); *Green*, 108 F.3d at 1299–1300 (claims for injunctive and declaratory relief are

moot where the prisoner has been released or transferred and is no longer subject to the conditions of confinement on which his claims are based).   However, an exception to the mootness doctrine applies in cases that are "capable of repetition, yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (*per curiam*).   This exception applies when two elements are met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id*.   The second element is not satisfied by a mere "theoretical possibility" that the same controversy will recur involving the same complaining party; instead, there must be a "reasonable expectation" or a "demonstrated probability." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (*citing Weinstein*, 423 U.S. at 348). While Plaintiff has already been transferred to three prisons, and there is a "theoretical possibility" he will be transferred back to the CSP, this is not enough to fall within the exception to the mootness doctrine.

Accordingly, the Court recommends the District Court dismiss Plaintiff's sixth claim as moot.

> B.   <u>Existing Class Action</u>

Recognizing that the District Court may disagree and find an exception to the mootness doctrine applies to this claim, the Court addresses Defendant's alternative ground for dismissing claim six.

"Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action." *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991).   "To permit them would allow interference with the ongoing class action." *Id*.   In a District of Colorado case currently before Judge William J. Martinez and

Magistrate Judge Kathleen M. Tafoya, inmates at the CSP claim that the facility's denial of outdoor exercise to all inmates housed in administrative segregation violates the Eighth Amendment. *Decoteah v. Raemisch*, No. 13-cv-3399-WJM-KMT, 2014 WL 3373670, at *2 (D. Colo. July 10, 2014). Judge Martinez certified the following class in that case: "All inmates who are now or will in the future be housed in administrative segregation at the Colorado State Penitentiary and who are now or will in the future be subjected to the policy and practice of refusing to provide such inmates access to outdoor exercise." *Id.* at *7. Contrary to Defendants' position, it is not clear Plaintiff would be a member of that class because he does not allege that he was housed in administrative segregation when he was deprived outdoor recreation. Although Plaintiff mentions administrative segregation in the context of other claims, he makes no reference to administrative segregation within the context of his claim six allegations. The Court has reviewed the complaint as a whole and is unable to determine whether Plaintiff was housed in administrative segregation at the CSP when the alleged deprivation of outdoor recreation occurred. Thus, Plaintiff's claim may not interfere with the existing class action if it relates to the outdoor recreation conditions of the CSP general population.

Accordingly, should the District Court find that claim six is not moot, or that an exception to the mootness doctrine applies, the Court recommends denying the motion to dismiss on grounds that there is an existing class action.

## CONCLUSION

In sum, the Court finds and concludes as follows:

(1) Claim one fails to plausibly allege the personal participation of Defendants Gilbert, Mahoney, Archuleta, Adams, Spurlock, Witz, Cutcher, Grooms, White, Casady, and Maher, and should be dismissed against these Defendants;

(2) Claim two plausibly alleges the personal participation of Defendants Solano and Brown;

(3) Claim four plausibly alleges the personal participation of Defendant Foster and plausibly alleges a First Amendment retaliation claim;

(4) Claim five fails to plausibly allege the personal participation of Defendants Raymond, T. Trujillo, and Barbero and should be dismissed against these Defendants; and

(5) Claim six is moot.

Based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Defendants' Partial Motion to Dismiss [filed August 4, 2014; docket #40] be **GRANTED** in part and **DENIED** in part as set forth herein.

Respectfully submitted this 2nd day of December, 2014, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge